UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BRIAN E. BACARDI and | ) | No. 09 B 25757 |
| JEAN M. BACARDI, | ) | |
| | ) | |
| Debtors. | ) | Judge Goldgar |

### MEMORANDUM OPINION

This matter is before the court for ruling on the motion of the U.S. Trustee to dismiss the chapter 7 case of debtors Brian and Jean Bacardi for abuse pursuant to section 707(b)(3) of the Bankruptcy Code. The motion is well-taken. For the reasons that follow, the Bacardis will be given 14 days to file a motion to convert their case to chapter 11. If no motion is filed, the case will be dismissed.

### 1. Facts

The facts are taken from the Bacardis' petition, schedules, and other filings with the court, as well as from the parties' memoranda. No facts are in dispute.

Brian Bacardi is a podiatrist with his own practice. The practice is a mobile one: Dr. Bacardi sees patients in their homes. Jean Bacardi is a chemical engineer. The Bacardis have three sons, ages 13, 12, and 8, and live in Hawthorn Woods, Illinois.

The Bacardis together earn $18,000 per month, some $216,000 annually before taxes. They own three properties: their current residence, a house on Deer Point Drive in Hawthorn Woods, valued on the Bacardis' amended Schedule A at

$790,000; a house on Squire Road in Hawthorn Woods valued at $500,000; and a condominium in Fort Walton Beach, Florida, valued at $400,000. The mortgage balances on each property currently exceed the property's value – in the case of the Deer Point Drive property, by almost $200,000. The monthly mortgage payment and real estate taxes on the Squire Road property total $4,419. The monthly mortgage payments and real estate taxes on the Deer Point Drive property where the Bacardis now reside total $6,234. The monthly mortgage payments and assessment on the Florida condo total $3,455, until August 2009 partially offset by $1904 in monthly rental income.[1]

The Bacardis lived in the Squire Road property from 1994 until 2006, when they moved to the Deer Point Drive property. The Bacardis meant to sell the Squire Road property in connection with the move but were unable to do so. For a time they rented the property. Then, they used more than $250,000 in retirement funds to pay the mortgages and other expenses not only on the Squire Road property but on the Deer Point Drive property and the Florida condo. Once the Bacardis exhausted their retirement funds, they used their credit cards to pay the mortgages and expenses. Meanwhile, the collapse of the real estate market not only impaired their ability to sell the Squire Road property but reduced the market values of all the properties below the amounts the Bacardis owed on the mortgages.

---

[1] The $3,455 figure represents the total expenses shown on the Bacardis' amended Schedule J, and the $1,904 rent figure is from their amended Schedule I. In their response memorandum, the Bacardis give figures totaling $3,415 as the expenses associated with the Florida condo and list $1905 as the rent. Since a debtor's schedules are submitted under oath, the amended Schedules I and J are more reliable than the memorandum.

On July 16, 2009, the Bacardis filed a chapter 13 bankruptcy case. Two weeks later, the Bacardis converted the case to a case under chapter 7. (No reason for the conversion has been given, but it appears the Bacardis were well over the debt limit in section 109(e) for a chapter 13 case). The Bacardis' amended schedules filed on July 29, 2009, disclose the three real properties and the associated mortgages as well as three vehicles (a 2002 Ford Explorer, a 2004 Ford Taurus, and a 2006 Dodge Caravan.) According to amended Schedule D, the Bacardis have about $2.1 million in secured debt, of which $436,000 exceeds the value of the collateral. Amended Schedule E discloses $52,500 in priority unsecured debt consisting of taxes owed to the IRS and the Lake County Treasurer. On amended Schedule F, the Bacardis report $106,000 in nonpriority unsecured debt, most of it credit card debt.

An amended Schedule J filed July 30, 2009, reflects, among others, the following monthly expenses: $720 for heating, electricity, and home maintenance on the Deer Point Drive property, $3,455 for mortgage payments and assessments on the condominium, $115 for cable television, $130 for cell phone use, $500 for "children's sports activities," and $75 for recreation. Schedule J also disclosed $3,261 in monthly business expenses for Brian Bacardi's practice. A separate amended business income and expense statement broke those expenses down. They included $718 for seminars and continuing education, $717 for billing, and $100 a month for internet service.

The amended Form B22A filed on July 29, 2009, the means test form, showed

that the Bacardis passed the means test in section 707(b)(2), and their case did not give rise to a presumption of abuse. The U.S. Trustee has not contested the Bacardi's calculations on the form and has not disputed that there is no presumption of abuse.

On October 22, 2009, however, the U.S. Trustee filed a motion to dismiss the Bacardis' case under section 707(b)(3) of the Code. The U.S. Trustee argued that given the Bacardis' high income, a home the Trustee describes as a "luxury home on a lake," and many unreasonably high expenses (including expenses for a Florida condo and certain of Brian Bacardi's business expenses) made the case an abuse of the provisions of chapter 7 under the "totality of the circumstances" in section 707(b)(3)(B), notwithstanding the results of the means test.

In response, the Bacardis explain how they inadvertently ended up with three real properties on their hands. They note that they intend to surrender the Squire Road property to foreclosure. And although they originally intended to retain the Florida condo, they are now willing to surrender that property to foreclosure as well.

In their response, the Bacardis concede that certain expenses (such as the $500 for children's sports activities and the cable television bill) are excessive. Nevertheless, the Bacardis insist that with the surrender of the two properties and the reduction of certain expenses, their case is not an abuse. In particular, they argue, a revised Schedule J with hypothetical reductions in expenses would produce

only $129 in disposable income, making it impossible for them to pay any meaningful amount to unsecured creditors or confirm a chapter 11 plan.

## 2. Discussion

This U.S. Trustee is correct that this case is an abuse of chapter 7. The expenses that the U.S. Trustee identifies aside, the Bacardis are high income debtors living in an expensive house although they have a considerably less expensive house available to them. Surrendering the expensive house and retaining the less expensive one would permit the Bacardis to make a substantial payment to their unsecured creditors. Reducing some of the Bacardis' other expenses would permit an even more substantial payment.

Section 707(b)(1) of the Bankruptcy Code permits the dismissal of a chapter 7 debtor's case if granting that debtor relief "would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Under section 707(b)(2), the court must "presume abuse" if a debtor fails the means test. Under section 707(b)(3), a court may dismiss the case of a debtor who passes the means test, or who manages to rebut the presumption of abuse under section 707(b)(2), if the debtor filed the petition in bad faith or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)((A), (B); *In re Ross-Tousey*, 549 F.3d 1148, 1161-62 (7th Cir. 2008).

"Totality of the circumstances," a phrase that appeared in section 707(b) even before BAPCPA's 2005 revision of the Bankruptcy Code, is not defined, and the Seventh Circuit has never addressed it. The post-BAPCPA structure of the statute,

-5-

however, gives some guidance to its meaning. Section 707(b)(2) creates an objective test under which some cases are presumed abusive. Section 707(b)(3) then permits dismissal even if a debtor passes the objective test, setting up a contrasting "totality of the circumstances" test that requires a more subjective, holistic assessment of the debtor and his circumstances. *See In re Sullivan*, 370 B.R. 314, 319 (Bankr. D. Mont. 2007) (describing section 707(b)(3) as "subjective"); *see also In re Haar*, 373 B.R. 493, 499 (Bankr. N.D. Ohio 2007) (calling section 707(b)(3) an "equitable test" as opposed to the "rigid, mechanical formula" in section 707(b)(2)).

In addition, the separate requirement in section 707(b)(3)(A) that the court dismiss a case when the petition was filed in "bad faith" indicates that a case can be dismissed for abuse under the "totality of the circumstances" test in (B) based solely on ability to pay and without, for example, proof of misconduct on the debtor's part. *In re Perelman*, ___ B.R. ___, ___, 2009 WL 3490758, at *8 (Bankr. E.D.N.Y. Oct. 30, 2009). Some courts have held otherwise, *see, e.g., In re Nockerts*, 357 B.R. 497, 506-8 (Bankr. E.D. Wis. 2006) (holding that "more than the ability to fund a chapter 13 plan" must be shown to dismiss a case under section 707(b)(3)(B)), but these courts are a minority, *see, e.g. In re Boule*, 415 B.R. 1, 5 (Bankr. D. Mass. 2009) (declining to follow *Nockerts*); *see also In re Jensen*, 407 B.R. 378, 383 (Bankr. C.D. Cal. 2009) (same, and noting that "the majority of courts and commentators" disagree with *Nockerts*); *In re Parada*, 391 B.R. 492, 498 (Bankr. S.D. Fla. 2008) (same).

Before BAPCPA, the courts of appeals in six circuits had interpreted "totality of circumstances" by adopting open-ended, multi-factor tests. *See Costello v.*

*Bodenstein*, No. 01 C 9696, 2002 WL 1821663, at *3 (N.D. Ill. Aug. 7, 2002) (citing cases). Except for the Fourth Circuit in *In re Green*, 934 F.2d 568 (4th Cir. 1991), these courts agreed that the primary factor in determining what the pre-BAPCPA version of the statute called "substantial abuse" (rather than merely "abuse") was the debtor's ability to repay his debts. *See Costello*, 2002 WL 1821663, at *4. These courts of appeals also concluded that an ability to repay debts standing alone could be sufficient to warrant dismissal, although other factors might be relevant. *Id.*

Other relevant factors could include whether the debtor has a stable source of future income, whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities, whether the petition was filed because of sudden illness calamity, disability or unemployment, whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay, and whether the debtor's schedules reasonably and accurately reflect his true financial condition. *See Green*, 934 F.2d at 572; *In re Krohn*, 886 F.2d 123, 127 (6th Cir. 1989). The "totality of the circumstances" analysis is fact-intensive and performed on a case-by-case basis. *In re Stewart*, 175 F.3d 796, 809 (10th Cir. 1999).

In this case, the Bacardis have the ability to pay creditors even with no reduction in the expenses the U.S. Trustee deems excessive. The amended Schedule J shows average monthly income of $16,273 and average monthly expenses of $18,755, resulting in negative net monthly income of $2,482.57. But these figures assume that the Bacardis will have the expenses (and the income)

associated with the Florida condo when in fact they have decided not to keep the condo. More important, they assume the Bacardis will continue to live on their Deer Point Drive property with its attendant monthly expenses of $6,234 and surrender the Squire Road property.

If the Bacardis surrendered not only the condo but the Deer Point Drive property and instead retained the Squire Road property, they could make a significant payment to their unsecured creditors. Surrendering the condo would reduce the Bacardis' income to $14,368 and expenses to $15,300. Surrendering the Deer Point Drive property rather than the Squire Road property would replace $6,234 in monthly mortgage and tax payments with monthly mortgage and tax payments of $4,419, reducing the Bacardis' expenses another $1,815 to $13,485 and giving the Bacardis positive monthly net income of $883 ($14,368 minus $13,485). Sixty monthly payments of $883 would total $52,980. Taking just the additional $550 reduction the Bacardis themselves propose in expenses for cable television and sports activities would produce monthly net income of $1,433 which over sixty months would total $85,980. *See Boule*, 415 B.R. at 8 (noting that $1,000 in excess monthly income is a number "large enough to question" why a debtor "is not making an attempt to pay something to her creditors").

A debtor's budget may be excessive or unreasonable because of high housing expenses, including a high mortgage payment. *See In re Crink*, 402 B.R. 159, 171 (Bankr. M.D.N.C. 2009) (citing numerous cases for this proposition). In *Crink*, for example, the court found the debtors' housing expenses unreasonable because they

totaled 61% of the debtors' budget and were devoted to a $478,000 house in which the debtors had no equity. *Id.* The court noted that in considering whether housing expenses are unreasonable, "due regard should be given to the size of the family, their reasonable needs, and the cost of alternative housing," *id.*, but nevertheless found the housing expenses showed abuse and justified dismissal, *id.* at 172.

In this case, the Bacardis' housing expenses associated with the Deer Point Drive property are likewise unreasonably high. The mortgage payment and real estate taxes alone make up 40% of the Bacardis' total expenses. If utilities and maintenance are included, the expenses grow to $6,954, and the percentage of the total increases to 45%. Not only are the Bacardis paying an excessive amount of their income to live on Deer Point Drive, but they propose to continue making these payments to retain an $800,000 property in which they do not remotely have any equity.

Fortunately, the Bacardis have an alternative: the Squire Road property. The Squire Road property is in the same municipality, Hawthorn Woods, and the Bacardi family is no larger than it was in 2006, only three years ago, when the Bacardis moved out. The Bacardis thus have no "longstanding, traditional ties to a homestead" that might weigh in favor Deer Point Drive. *Crink*, 402 B.R. at 171. Nor do the Bacardis offer any reason to keep the Deer Point Drive property, a property that can fairly be termed a luxury item, *In re Oot*, 368 B.R. 662, 667 (Bankr. N.D. Ohio 2007) (finding that a $430,000 house with a $4,000 mortgage payment "can only be categorized as a luxury item"), when the Squire Road

property is available. The cost of living at the Squire Road property is $1,815 less per month than the cost of living at the Deer Point Drive property. Returning to Squire Road, along with a little "good, old-fashioned belt-tightening," *Krohn*, 886 F.2d at 128, would permit a substantial dividend to unsecured creditors. Fairness to those creditors demands at least that much.[2]

In opposing the U.S. Trustee's motion, the Bacardis insist they will be able to repay only a small percentage of their unsecured debt in a chapter 11 case. Not so. Even if probable deficiency claims of $388,000 from the Florida condo and Deer Point Drive property are added to the $158,500 in priority and nonpriority unsecured debt shown on the Bacardis' schedules, plan payments totaling $52,980 (the Bacardis' disposable income over five years if the Deer Point Drive property is

---

[2] Some courts hold that unreasonable housing costs alone, specifically unreasonable mortgage payments, do not provide a basis for dismissal under section 707(b)(3). *See, e.g., In re Dumas*, ___ B.R. ___, 2009 WL 3856664 (Bankr. E.D. Tex. Nov. 17, 2009); *In re Johnson*, 399 B.R. 72 (Bankr. S.D. Cal. 2008). These courts reason that in both chapter 13 and chapter 11 cases an above-median debtor's disposable income is calculated using the means test in section 707(b)(2), that section 707(b)(2)(A)(iii) permits an unlimited deduction for payments on secured debt (including mortgage payments), that a debtor will therefore have no greater ability to repay creditors in a chapter 13 or chapter 11 case, and thus that a debtor's "housing payment has been effectively immunized from scrutiny on the basis of reasonableness." *Dumas*, ___ B.R. at ___, 2009 WL 3856664 at *4. One problem with this view is that the means test does not in fact apply in chapter 11. Section 1129(a)(15) mentions section 1325(b)(2) but not section 1325(b)(3). *See* 11 U.S.C. § 1129(a)(15). Another problem is that this view makes the means test dispositive under section 707(b)(3) and limits what courts can consider under that section, although section 707(b)(3) applies even when a case passes the means test and expressly requires courts to consider the "totality of the circumstances." Courts adhering to the view in *Dumas* and *Johnson* would presumably find no abuse in letting a chapter 7 debtor continue making payments on the castle in Spain while paying nothing to his unsecured creditors.

surrendered and the Squire Road property retained) would repay 10% of the Bacardis' unsecured debt. Plan payments totaling $85,980 (the Bacardis' disposable income over five years if the Deer Point Drive property is surrendered and a few additional expenses are reduced) would repay 16% of the Bacardis' unsecured debt.[3/]

More important, the raw percentage of unsecured debt a debtor can conceivably repay in a chapter 13 or chapter 11 case is not dispositive of abuse under section 707(b)(3). If it were, a debtor could avoid dismissal for abuse simply by incurring massive amounts of debt and reducing the percentage of his repayment proportionally. *See Boule*, 415 B.R. at 7-8 (recognizing that the "amount of unsecured debt and a potential dividend are inversely proportional so that debtors with higher amounts of debt might skate around the totality of the circumstances test if a strictly mathematical formula were to be applied"). What matters here is that the Bacardis can easily rearrange their affairs to free up more than $1,400 in monthly disposable income, allowing them to repay unsecured creditors more than $85,000.

The Bacardis also contend that the amount they can repay their unsecured creditors is too small to permit confirmation of a chapter 11 plan, presumably because creditors will not vote for the plan. Perhaps not. But not every chapter 11 debtor manages to confirm a plan, and a chapter 7 debtor's anticipated inability to confirm a chapter 11 plan does not prevent the dismissal of his case for "abuse."

---

[3/]    In the absence of deficiency claims, of course, the potential dividend to unsecured creditors grows to 33% if $52,980 is repaid and 54% if $85,980 is repaid.

The Sixth Circuit rejected this same contention in *Krohn*, where the debtor opposed dismissal on the ground that he did not qualify for chapter 13 and "is not likely to benefit from Chapter 11 relief because he has only minimal assets with which to propose a plan." *Krohn*, 886 F.2d at 127. The court accepted that premise but nonetheless was unpersuaded that the debtor was "entitled to relief under *some* provision of the Bankruptcy Code." *Id.* (emphasis in original). Noting that bankruptcy law is "a creature of congressional policy" and there is no constitutional right to a discharge, the court concluded that the absence of a linkage between chapters 7 and 13 showed "there are some circumstances where it would not be equitable to grant a particular debtor a fresh start." *Id.* The Code does not guarantee a discharge to everyone.

In sum, it is an abuse of chapter 7 for the Bacardis – high income debtors making over $200,000 a year – to keep an $800,000 house when they have a reasonable housing alternative readily available that will permit a substantial repayment to their unsecured creditors.[4]

### 3. Conclusion

Debtors Brian and Jean Bacardi will be given 14 days to file a motion to convert this case to a case under chapter 11. If no motion is filed in that time, the

---

[4] This case would an abuse even if the Bacardis had no second, less expensive home available to them. The Bacardis are high income debtors with excessive housing costs, costs they are effectively asking their unsecured creditors to bear. They have the ability to repay those creditors, at least in part, and should do so.

motion of the U.S. Trustee to dismiss this case under section 707(b)(3) for abuse will be granted. A separate order will be entered consist with this opinion.

Dated: January 6, 2010

                                            A. Benjamin Goldgar
                                            United States Bankruptcy Judge